# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN C. HARRIS,

     Plaintiff,

  v.

CSX TRANSPORTATION, INC.,
a foreign corporation,

     Defendant.

Case No.
Hon.

---

GEOFFREY N. FIEGER (P30441)
THOMAS R. WARNICKE (P47148)
FIEGER, FIEGER, KENNEY, GIROUX & DANZIG, P.C.
Attorneys for Plaintiffs
19390 West Ten Mile Rd.
Southfield, MI 48075-2463
(248) 355-5555

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, John C. Harris, for his Complaint against Defendant, states and alleges the following:

### Jurisdiction and Venue

1. Plaintiff, John C. Harris, currently is and has been at all times relevant hereto, a resident of Wyandotte, county of Wayne, and state of Michigan.

2. Upon information and belief, Defendant, CSX Transportation, Inc., (hereinafter referred to as "Defendant" or "CSXT") is a foreign railroad corporation with its principal place of business in Jacksonville, Florida.

1

Defendant conducts business throughout the United States, including within the jurisdiction of this Court.

3. At all times relevant hereto Plaintiff worked for Defendant at its Livonia, Michigan corporate offices.

4. This action is brought pursuant to the Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and the Michigan Elliott-Larsen Civil Rights Act.

5. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The court also has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1332, 1337, 1343, and/or 1345.

6. Declaratory, injunctive and other appropriate relief, including economic, non-economic, exemplary and/or punitive damages, are sought pursuant to the aforementioned Acts.

7. Certain employment practices alleged to be unlawful in this matter occurred at Defendant's office located in the city of Livonia, county of Wayne, and state of Michigan, which was the location where Plaintiff was employed, and is otherwise within the jurisdiction of this Court.

8. Plaintiff was terminated from his employment by Defendant on or about December 12, 2010.

9. On or about March 3, 2011, Plaintiff filed with the Detroit office of the EEOC a charge of retaliation against Defendant CSXT, as evidenced by attached Exhibit A.

2

10. On November 30, 2011, the EEOC mailed Plaintiff a document entitled "Dismissal and Notice of Rights," as evidenced by attached Exhibit B.

11. Plaintiff filed this instant action within 90 days of his receipt of Exhibit B.

## General Allegations and Statement of Claims

12. Plaintiff re-alleges and incorporates the paragraphs above.

13. Plaintiff began his employment with Defendant in or about May of 1974 in the position of Police Officer.

14. During his employment, Plaintiff worked at various CSXT locations, all of which were located within southeastern Michigan.

15. Plaintiff received various promotions during his employment with CXST, as well as agreeing to numerous lateral moves at the request of the company.

16. Additionally, Plaintiff routinely received satisfactory or above employee reviews and evaluations, as well as company awards and recognition.

17. At the time of termination, Plaintiff's position was Commander of Police for Defendant CSXT.

18. In or about April of 2010, Plaintiff became aware of an instance involving harassment and a hostile work environment for one of the subordinates he supervised.

19. Specifically, a female subordinate (Special Agent Randi Tinglan) came to Plaintiff, in tears, to report that her fellow Special Agents working in the Detroit area were talking about her to others, both inside and outside Defendant's Police Department, and inside and outside the CSXT Corporation.

3

20. Tinglan reported to Plaintiff that she had been told of false rumors about her including that she was working with her boss (Plaintiff) to have others fired, that she was not doing her job and was pushing work off on others, that she was sleeping with the boss, etc., and that she was being told that no one wanted to work with her, that no one trusted her.

21. Plaintiff promptly reported to his superior at Defendant CSXT, Chief Bill Laubenheimer, Laubenheimer's assistant, Lavon Kaedel, as well as Bridgette Churchill of Human Resources, what he believed to be a sexually hostile work environment and harassment based up Tinglan's report to him.

22. Plaintiff was instructed by Brigitte Churchill of Defendant CSXT's HR Department to conduct a meeting with all personnel that reported to him (numbering approximately 10-15) to warn against the spreading of rumors about others and to refrain from speaking negatively about one another.

23. The meeting was held in April of 2010, wherein Plaintiff warned against the rumors and negative behavior and passed out literature explaining the legal definitions of slander and libel.

24. Pursuant to the meeting, Plaintiff thought the issues were resolved.

25. However, approximately five months later, in September of 2010, Tinglan again reported to Plaintiff that the same rumors as referenced above were being circulated.

26. Tinglan told Plaintiff she felt sick about even coming to work.

27. The very next day, a Hispanic male subordinate, Special Agent Luis Mojica-Ortiz reported to Plaintiff that he also felt harassed and isolated at the

4

workplace, that others did not want to work with him, and did not want to be around him.

28. Mojica-Ortiz further told Plaintiff that he hated to come to work, felt too much pressure, distrust and tension, and that even coming to work was making him sick.

29. Mojica-Ortiz asked Plaintiff to convene a meeting with the Special Agents from the Detroit area in an effort to clear the air.

30. Plaintiff held the requested meeting on September 15, 2010.

31. During the meeting, which was taking an emotional toll on those involved, especially Tinglan and Mojica-Ortiz, it became clear that one Special Agent, a white male by the name of Ryan McInerney, had been sending multiple text messages and making repeated telephone calls to both Tinglan and Mojica-Ortiz telling them that other agents did not like them or trust them and that he was their only friend.

32. Tinglan and Mojica-Ortiz were unaware they were both receiving the same kind of messages from McInerney prior to the meeting.

33. They both realized that the harassment and hostile environment they had both been enduring for months was largely a result of the lies and deceit of McInerney.

34. Plaintiff promptly reported the details of this meeting and what he believed to be harassment and a hostile environment based on gender and ethnicity/ national origin/race to his superiors, including his new Chief Jackie Litzinger, Kaedel, and Deputy Chief Bob Flake, and explained that Tinglan and now

5

Mojica-Ortiz were still enduring harassment and a hostile work environment and that McInerney failed to comply with Plaintiff's anti-harassment directives from the April 2010 meeting.

35.     Plaintiff also informed his superiors that he believed sanctions were called for against McInerney.

36.     Plaintiff was told by his superiors, Deputy Chief Flake and Chief Litzinger, that they would be coming into the Detroit area soon to investigate and address the situation.

37.     A few days later, Tinglan approached Plaintiff and asked permission to place a call to Deputy Chief Flake, wherein Tinglan and Flake spoke about the situation for approximately an hour or more.

38.     Several days after that discussion, Tinglan again approached Plaintiff and asked if she could call Chief Litzinger, wherein Tinglan and Litzinger spoke for approximately 20 minutes about the situation.

39.     However, no one came to the Detroit area to interview the Special Agents and no action had been taken whatsoever for the next few weeks.

40.     Thus, in or about early October of 2010, Plaintiff reported the situation to Churchill in Defendant's HR Department.

41.     Churchill immediately recognized the situation as a continuation of the issues Plaintiff was dealing with in April 2010.

42.     The following day, Plaintiff received a telephone call from Flake informing him that the Police Department would no longer be handling the matter and that it had been turned over to HR.

6

43. In approximately late October 2010, while Plaintiff was attending a staff meeting in Florida, he was informed by Flake, Litzinger and Churchill that internal auditors would be coming to the Detroit area to investigate the matter, and that, according to Churchill, they would interview Plaintiff first to begin to determine what was taking place.

44. On or about November 10, 2010, Plaintiff received a telephone call from Tinglan informing him that Defendant's internal auditors had called her, only instead of asking her about the situation, they only interrogated her about Plaintiff.

45. Specifically, Tinglan told Plaintiff the auditors asked her if Plaintiff coerced her into accusing McInerney of harassment, if Plaintiff had tape recorded the meetings and if Plaintiff made her sign a statement.

46. On or about November 17, 2011, Plaintiff attended a meeting in Florida at the request of Defendant.

47. During the meeting, Plaintiff was interviewed by Churchill.

48. Plaintiff informed Churchill that he believed Tinglan and Mojica-Ortiz were being subjected to harassment and a "hostile work environment" due to their gender and national origin/ethnicity.

49. Plaintiff also expressed his concerns and objections to Churchill for Defendant not taking any action to address and remedy the situation.

50. Churchill "corrected" Plaintiff by stating that the situation was not a hostile work environment because it was a fellow Special Agent behaving inappropriately and was not an action by Defendant.

51. Plaintiff told Churchill that while he was not a lawyer, he believed that once Defendant was made aware of the situation and failed to take any action, their failure to take action left them with some responsibility.

52. On December 12, 2010, Plaintiff was informed by Churchill in a meeting in Novi, Michigan that he was being terminated by Defendant.

53. At the time of his termination, Plaintiff had worked for Defendant for approximately 36 years.

54. Churchill told Plaintiff at the time of his termination that he had done nothing wrong, however, because he was an at-will employee, Defendant was exercising its prerogative and terminating his employment.

55. Plaintiff's termination was without merit and was done in retaliation against Plaintiff due to his reporting and objecting to Defendant's management about unlawful harassment and a the hostile environment.

## COUNT I-II

## RETALIATION IN VIOLATION OF TITLE VII, CRA OF 1991 AND ELCRA

56. Plaintiff repeats and re-alleges the allegations set forth above.

57. At all times pertinent hereto, Defendant CSXT had at least 15 employees and was Plaintiff's employer within the meaning of Title VII, the Civil Rights Act of 1991, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA").

58. Plaintiff complained of, objected to, and reported to Defendant CSXT's corporate management and Human Resource Department what he believed to be an unlawful harassment and a hostile environment, as well as Defendant's failure to do anything to remedy the situation.

8

59. Defendant was aware that Plaintiff engaged in the above-referenced protected activity.

60. Defendant retaliated against Plaintiff for engaging in this protected activity.

61. As direct and proximate result of Defendant's unlawful actions against Plaintiff, he has sustained injuries and damages including, but not limited to, economic and non-economic damages, loss of earnings and earning capacity; loss of career opportunities, humiliation and embarrassment; mental and emotional distress; outrage; disappointment; anguish; depression; the loss of the ordinary pleasures of everyday life, including the right to a gainful occupation of choice; and loss of employment benefits. Plaintiff is also entitled to additional compensatory, consequential, incidental and/or exemplary or punitive damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant as follows:

    a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

    b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

    c. Economic damages, including for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

    d. An award for the value of lost fringe and pension benefits, past and future;

    e. An award of interest, costs, and reasonable attorney fees;

9

f. An injunction prohibiting any further acts of retaliation or discrimination; and

g. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

## COUNT III – Violation of the Bullard-Plawecki Employee Right To Know Act

62. Plaintiff repeats and re-alleges the allegations set forth above.

63. On January 17, 2012, Plaintiff, through his undersigned counsel, requested in writing to Defendant CSXT that it produce all records requested in an executed "Authorization to Copy and Produce Employment Records."

64. To date, Defendant CSXT has failed to produce a copy of Plaintiff's employment records as requested.

65. Defendant's failure and/or refusal to provide Plaintiff's employment records was done willfully, knowingly and is a violation of the Michigan Bullard-Plawecki Right to Know Act. MCL 423.501 et seq.

66. Plaintiff is entitled to injunctive relief as well as (1) actual damages plus costs or (2) $200 plus costs, reasonable attorney fees, and actual damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants as follows:

a. An injunction relief compelling production of such records;

b. Whatever other equitable relief appears appropriate at the time of final judgment; and

c. Actual damages plus costs, or, $200 plus costs, reasonable attorney fees, and actual damages.

10

Respectfully submitted,


/s/ Thomas R. Warnicke
GEOFFREY N. FIEGER (P30441)
THOMAS R. WARNICKE (P47148)
Attorneys for Plaintiff
Fieger, Fieger, Kenney, Giroux & Danzig, P.C.
19390 W. 10 Mile Road
Southfield, MI 48075
(248) 355-5555

11

## JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

Respectfully submitted,


/s/ Thomas R. Warnicke
GEOFFREY N. FIEGER (P30441)
THOMAS R. WARNICKE (P47148)
Attorneys for Plaintiff
Fieger, Fieger, Kenney, Giroux & Danzig, P.C.
19390 W. 10 Mile Road
Southfield, MI 48075
(248) 355-5555

12

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 471-2011-01659 |

| Michigan Department Of Civil Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. John Harris | (734) 246-9759 | 07-03-1954 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1920 Davis, Wyandotte, MI 48192 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CSX TRANSPORTATION | 500 or More | (734) 465-5701 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 12780 Levan Road, Livonia, MI 48150 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest: 12-13-2010  Latest: 12-13-2010<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working for the above employer in May 1974, as a Police Officer.

In September 2010, I became aware that two fellow Police Officers, a woman and Hispanic, were receiving phone calls, e-mails, and text on a regular basis which made them feel isolated, and that others were trying to get them fired. I reported this situation to mine and their Supervisor in mid September saying that these two Police Officers were being subjected to a "hostile work environment" and was told an investigation would take place. As time went on I learned that the investigation became focused on me. Then on December 13, 2010, I was told that the investigation was complete and that I was being discharged, and when I asked I was not given any specific reason why.

I believe I have been discriminated by being Retaliated against for reporting an unlawful employment practice, in which Hispanics and women were treated to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Mar 03, 2011<br>Date      *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 3/3/11 |

# EXHIBIT  B

EEOC Form 161 (11/09)

U.S. ᴇQUAL EMPLOYMENT OPPORTUNITY COMMᴍᵢₛSION

## DISMISSAL AND NOTICE OF RIGHTS

o:  **John Harris
1920 Davis
Wyandotte, MI 48192**

From:  **Detroit Field Office
477 Michigan Avenue
Room 865
Detroit, MI 48226**

| | | |
|---|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2011-01659 | **Stephen A. Van Kerckhove, Investigator** | (313) 226-2025 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Webster N. Smith,
District Director**

11/30/11

*(Date Mailed)*

Enclosures(s)

cc:  **Linda Mundy
EEO Manager
CSX TRANSPORTATION
500 Water Street
J-400
Jacksonville, FL 32202**